UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF INDIANA
FORT WAYNE DIVISION

| | |
|---|---|
| RAYMOND MACK, | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| v. | ) Cause No. 1:24-CV-102-HAB |
| | ) |
| EAST ALLEN COUNTY SCHOOLS, et al., | ) |
| | ) |
| Defendants. | ) |

**OPINION AND ORDER**

Plaintiff sued several individuals and entities after he was fired from his bus driver job. Now before the Court is a motion to dismiss (ECF No. 42) filed by Defendant Michael LaRocco ("LaRocco"). LaRocco argues that he cannot be held liable on a federal due process claim because Plaintiff was not entitled to any pre-deprivation process under Indiana law. But Plaintiff was entitled to some Constitutional due process, regardless of the requirements of Indiana statute. The Court finds that Plaintiff has alleged a deprivation of that process and that LaRocco was personally involved in that deprivation. LaRocco's motion will be denied to the extent it requests dismissal of individual capacity claims.

**I.     Well-Pleaded Facts[1]**

Plaintiff was hired as a special needs school bus driver by East Allen County Schools ("EACS") in October 2019. In February 2023, Plaintiff found a sleeping student during his post-route inspection. Plaintiff reported this incident to EACS and received a written reprimand. This was Plaintiff's first discipline since his hire.

---

[1] LaRocco moves under Fed. R. Civ. P. 12(b)(6), so the Court accepts the well-pleaded factual allegations in Plaintiff's Third Amended Complaint as true.

In January 2024, EACS received a report that Plaintiff conducted an "unsafe driving procedure." Plaintiff had a meeting with EACS' Director of Transportation, Janet Good ("Good"), the next day. Plaintiff was suspended without pay after the meeting and, following a review of a video of the alleged "unsafe driving procedure," Plaintiff's employment was terminated.

On the same day Plaintiff was fired, Good communicated with LaRocco, an employee of the Indiana Department of Education ("IDOE"), about the February 2023 incident involving the sleeping student. LaRocco asked Good to make a formal report of the incident, and Good complied. As a result of Good's report, LaRocco revoked Plaintiff's "Bus Drivers [sic] Certification" for six months. Plaintiff was given no pre-deprivation hearing before the certification was revoked.

**II.     Legal Analysis**

**A.     *Motion to Dismiss Standard***

LaRocco has moved to dismiss this case under Rule 12(b)(6). A motion to dismiss under Rule 12(b)(6) challenges the sufficiency of the complaint, not its merits. Fed. R. Civ. P. 12(b)(6); *Gibson v. City of Chicago*, 910 F.2d 1510, 1520 (7th Cir. 1990). In considering a Rule 12(b)(6) motion to dismiss, the Court accepts as true all well-pleaded facts in the plaintiff's complaint and draws all reasonable inferences from those facts in the plaintiff's favor. *AnchorBank, FSB v. Hofer*, 649 F.3d 610, 614 (7th Cir. 2011). To survive a Rule 12(b)(6) motion, the complaint must not only provide the defendant with fair notice of a claim's basis but must also be facially plausible. *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 678.

Because Plaintiff proceeds pro se, the Court must follow the well-settled law of this Circuit that pro se complaints are not held to the stringent standards expected of pleadings drafted by

2

lawyers. Rather, pro se complaints are to be liberally construed. *See Sizemore v. Williford*, 829 F.2d 608, 610 (7th Cir. 1987).

**B.    *Plaintiff has Adequately Pled a Federal Due Process Claim***

The Court agrees with LaRocco that Plaintiff's claim against him is one under 42 U.S.C. § 1983 for a violation of due process. And that's where the agreement ends. LaRocco argues, without case law support, that the due process claim should be dismissed because "there is no requirement for a pre-revocation hearing." (ECF No. 43 at 4). In support, LaRocco cites Ind. Code § 20-27-8-15(e)(2)(D), which gives the IDOE the power to revoke a bus driver's certificate of completion for six months for "a judgment for a Class B or Class C infraction that endangers the safety or safe transportation of a student."

First, LaRocco is wrong about the requirements of the statute. The statute may not require a hearing, but that's only because it presupposes the existence of a prior civil judgment finding the driver liable for a Class B or Class C infraction. If LaRocco is confused about this requirement, he need only look to the remaining subsections of subpart (e)(2), requiring convictions when the alleged violations are criminal in nature. There is no allegation that there has been any such judicial finding here. Even if the statute represented the entirety of Plaintiff's due process rights, then, he has plausibly alleged a violation.

But a public employee's due process rights are not confined to state statute. Government-issued licenses to perform certain types of work that allow the license holders to earn their livelihoods are a form of government-created property—an entitlement—and have long been considered property protected by the Fifth and Fourteenth Amendments. *See Cleveland Bd. of Educ. v. Loudermill*, 470 U.S. 532, 543 (1985). The question is not whether Plaintiff was entitled to due process, but rather how much and when.

3

The general test for determining what process is due and when was set out in *Mathews v. Eldridge*, 424 U.S. 319 (1976). *Mathews* identified three factors to be balanced: first, the private interest at stake; second, the risk of erroneous deprivation and the value, if any, of additional procedural safeguards; and third, the government's countervailing interests. *Id*. at 335. The basic rights guaranteed by constitutional due process are notice of the intended adverse government action and an opportunity to be heard in response, although more elaborate procedural rights— such as the rights to present evidence, to confront adverse witnesses, and to be represented by counsel—may apply in cases in which vital private interests are at risk. *See generally Goldberg v. Kelly*, 397 U.S. 254 (1970). Governments may, of course, offer procedural protections that exceed the constitutional minimum through statute or administrative rule. Many state and local licensing schemes provide procedural protections that are far more elaborate than due process requires. *Simpson v. Brown Cnty*., 860 F.3d 1001, 1006 (7th Cir. 2017).

The *Mathews* balancing test generally requires some process before one is deprived of liberty or property. However, the Supreme Court has recognized that due process, "unlike some legal rules, is not a technical conception with a fixed content unrelated to time, place and circumstances." *Mathews*, 424 U.S. at 334 (citation omitted). The spectrum of due process requirements includes, at one end, a full trial-type evidentiary hearing before a deprivation occurs, as in *Goldberg* (termination of welfare benefits), and at the other end, procedures conducted after summary action has been taken in response to an emergency, as in *Hodel v. Virginia Surface Mining & Reclamation Ass'n*, 452 U.S. 264 (1981) (emergency order to stop mine operations followed immediately by notice and hearing).

Neither LaRocco nor Plaintiff engage in *Mathews* balancing, but the Court has little trouble at this point finding that Plaintiff's claim survives dismissal.

***Private Interest***. The Court assumes that Plaintiff's livelihood depended on his bus driver's license. The weight of the private interest in continued employment "cannot be gainsaid." *Loudermill*, 470 U.S. at 543. The Supreme Court has "frequently recognized the severity of depriving a person of the means of livelihood." *Id*. Plaintiff's interest in his license, then, is great.

***Risk of Error***. The Court must then consider the risk that, under established procedures (such as they are), a deprivation might occur erroneously. Under LaRocco's reading, the IDOE has unfettered discretion to revoke a license for six months, regardless of whether the statutorily required civil judgment has been entered. Such a regime is rife with risk for erroneous decisions. Indeed, as alleged by Plaintiff, error has occurred here, as the IDOE has relied on a statute that is plainly inapplicable. Given this risk, the Court sees no reason to believe that the cost of basic procedures (e.g., meaningful notice and an informal hearing) would be unduly burdensome in comparison with the protections those additional procedures would provide. *See Mackey v. Montrym*, 443 U.S. 1, 21 (1979) ("When a deprivation is irreversible—as is the case with a license suspension that can at best be shortened but cannot be undone—the requirement of some kind of hearing before a final deprivation takes effect is all the more important.").

***Government Interest***. The Court does not doubt the governmental interest in keeping students safe. But under the facts of this case, there is no reason to believe that the issues with Plaintiff's driving were so urgent or serious as to justify summary action by the IDOE, without opportunity for Plaintiff to be heard. After all, the factual basis for the revocation—the sleeping student incident—occurred nearly a year before the revocation.

Under *Mathews*, Plaintiff has plausibly alleged that he was denied the pre-deprivation process he was due before his license was revoked. LaRocco's arguments to the contrary are rejected.

### C.  *Plaintiff has Adequately Alleged LaRocco's Personal Involvement*

Next, LaRocco argues, again without case law support, that he was not personally involved in the revocation of Plaintiff's license. He points to the letter[2] informing Plaintiff of the revocation, which advised Plaintiff of his appeal rights. According to LaRocco, those appeal rights removed him from the causal chain, despite the undisputed fact that LaRocco was the individual who revoked Plaintiff's license. (*See* ECF No. 43-1 at 2) ("It is my decision as the Director of the Office of School Transportation . . . that your school bus driver training certification . . . is hereby revoked for six months.").

To be sure, suits under § 1983 require a defendant's personal involvement in the alleged constitutional violation to support a viable claim. *Palmer v. Marion Cnty.*, 327 F.3d 588, 594 (7th Cir. 2003). But the Court has trouble making any sense of LaRocco's denial of personal involvement in the revocation of Plaintiff's license. LaRocco directed Good to make the report that resulted in the revocation, and then wrote and signed a letter taking credit for the decision. Instead, his denial seems implausible on its face.

Plaintiff's failure to exhaust his administrative appeals may be an affirmative defense. *Walker v. Thompson*, 288 F.3d 1005, 1009 (7th Cir. 2002). But "courts should usually refrain from granting Rule 12(b)(6) motions on affirmative defenses. Rule 12(b)(6) tests whether the complaint states a claim for relief, and a plaintiff may state a claim even though there is a defense to that claim." *Brownmark Films, LLC v. Comedy Partners*, 682 F.3d 687, 690 (7th Cir. 2012). Even if Plaintiff's complaint is vulnerable to an affirmative defense later, it is not subject to dismissal now.

---

[2] A court may consider documents attached to a defendant's motion to dismiss without converting the motion to a summary judgment motion when those documents "are referred to in the plaintiff's complaint and are central to [the plaintiff's] claim." *Venture Associates Corp. v. Zenith Data Systems Corp.*, 987 F.2d 429, 431 (7th Cir. 1993).

D.      *Eleventh Amendment*

Finally, LaRocco argues that any official capacity claim against him is barred by the Eleventh Amendment. He is, of course, correct. *Kentucky v. Graham*, 473 U.S. 159, 166-67 (1985). But aside from a stray reference in the opening paragraphs of the Third Amended Complaint, the Court does not interpret the claim against LaRocco as an official capacity claim. Instead, as discussed above, LaRocco seems to have been intimately involved in the actions that form Plaintiff's complaint. Plaintiff will not be allowed to pursue an official capacity claim against LaRocco, but the Court sees no reason to grant a motion to dismiss on this basis.

III.    Conclusion

For these reasons, LaRocco's motion to dismiss (ECF No. 42) is DENIED.

SO ORDERED on December 10, 2024.

s/ *Holly A. Brady*
CHIEF JUDGE HOLLY A. BRADY
UNITED STATES DISTRICT JUDGE